## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ELUTIA INC.<br>(f/k/a AZIYO BIOLOGICS, INC.),<br><br>12510 Prosperity Drive<br>Suite 370<br>Silver Spring, MD 20904<br><br>              Plaintiff,<br><br>     v.<br><br>MCGRIFF INSURANCE SERVICES,<br>LLC.,<br><br>Suite 200<br>3201 Beechleaf Court<br>Raleigh, NC 27604<br><br>  Serve On:<br>  CSC-Lawyers Incorporating Service Co.<br>  7 St. Paul St., Ste. 820<br>  Baltimore, MD 21202<br><br>            Defendant. | Case No.<br><br>**TRIAL BY JURY**<br>**DEMANDED** |

## COMPLAINT

Plaintiff Elutia Inc. (f/k/a Aziyo Biologics, Inc.) files this Complaint and states as follows:

### NATURE OF THE ACTION

1.  This Complaint addresses the errors and omissions of Defendant McGriff Insurance Services, LLC. in connection with its failure to procure adequate and appropriate products liability insurance coverage for Elutia.

2.  An actual controversy exists between Elutia and McGriff concerning McGriff's failure to procure appropriate excess products coverage reflecting not

only (a) the insurance needs as specifically communicated by Elutia and as well-known by McGriff, but also (b) the assurances by McGriff that appropriate primary and excess coverage had been procured that would apply to Elutia's foreseeable product liability risks.

3.   Elutia is a life sciences company that produced biomedical products, including FiberCel Fiber Viable Bone Matrix ("FiberCel"), a human-tissue product that is implanted in patients after spinal surgery to help their cells regenerate.

4.   One of the known risks of the FiberCel product, as set forth in the product's instructions for use, is that "[c]urrent technologies may not preclude the transmission of infectious agents or disease."

5.   Elutia needed products liability coverage that would cover this known risk.  Elutia accordingly retained McGriff, an insurance broker which touts its ability to "find the best coverage for your unique needs," to procure this specialized coverage.

6.   The McGriff brokers working on the Elutia account had been designated based on their expertise and experience in procuring coverage for life sciences companies like Elutia, and these brokers specifically knew that Elutia was only interested in products liability coverage that eliminated the common exclusion for bacteria-inflicted bodily injury.  In retaining and continuing to utilize McGriff, Aziyo relied on McGriff's stated experience, knowledge and expertise required to place products liability for a life sciences company like Elutia.

7.      McGriff procured primary coverage from CNA Insurance Company for the 2020-21 policy year that specifically provided $10 million of such coverage (and, indeed, CNA provided defense and indemnity coverage in connection with the FiberCel claims discussed in this Complaint).

8.      McGriff also procured excess coverage for the 2020-21 policy year from Navigators Specialty Insurance Company ("Navigators") that was intended to provide an additional $15 million in such coverage (the "Navigators Policy"). McGriff informed Elutia that the excess policy would provide the coverage requested by Elutia and that McGriff knew to be needed by Elutia.

9.      McGriff approached Navigators, which is one of a small subset of insurance carriers that offers product liability coverage expressly tailored to cover product liability risks faced by life sciences companies like Elutia that produce biomedical products for human implant.  In particular, Navigators utilizes a specially designed life sciences form that, *inter alia*, reduces the scope of an exclusion purporting to exclude coverage for liability arising out of exposure to fungi or bacteria, such that the exclusion would not apply to bacteria contained in products (like the FiberCel product) intended for human implantation.  This coverage will be referred to as the BioMedical-Specific Coverage.

10.     For reasons that remain unclear, Navigators quoted coverage that referenced the incorrect policy form.  The incorrect policy form included a bacteria exclusion applicable to human-tissue products that neither McGriff nor Elutia

intended to be part of the excess policy.  At no time did Navigators inform McGriff that the quoted coverage contained such a bacteria exclusion.

11.    McGriff did not catch the improper inclusion of the broad bacteria exclusion prior to or after the issuance of the Navigators policy, nor did McGriff inform Elutia of the presence of the broad bacteria exclusion.  As a result, the Navigators Policy, attached as **Exhibit A**, was issued using a form that did not reflect the mutual intent of McGriff and Elutia that McGriff would procure excess coverage that included BioMedical-Specific Coverage.

12.    McGriff's undisclosed procurement error soon took on extreme significance.  In 2021 Elutia produced a single FiberCel batch using tissue harvested from donor material that contained the tuberculosis bacterium.  Although Elutia recalled the batch immediately upon learning of its infected status, more than 100 patients had already received implants.  Scores of product liability claims asserting exposure to tuberculosis and resulting bodily injury were asserted against Elutia (the "FiberCel Claims").

13.    As noted, CNA issued a primary policy that omitted any bacteria exclusion applicable to human-tissue products.  CNA accepted coverage of the FiberCel Claims, and it has exhausted the full $10 million limits of its policy.

14.    However, Navigators issued a denial of coverage based on the broad bacteria exclusion in its excess policy.  Because of McGriff's failure to procure the

proper excess products liability coverage, McGriff is legally responsible for any shortfall in excess coverage.

## PARTIES

15.    Plaintiff Elutia Inc. is currently, and since at least 2015 has been, a corporation duly organized and existing under the laws of the State of Delaware. Elutia maintains its principal place of business at 12510 Prosperity Drive, Suite 370, in Silver Spring, Maryland. Until September 6, 2023, Elutia was known as Aziyo Biologics, Inc.

16.    On information and belief, Defendant McGriff Insurance Services, LLC is a corporation duly organized and existing under the laws of the State of North Carolina and maintains its principal place of business in Charlotte, North Carolina. McGriff conducts business in the State of Maryland and has contracted to procure liability insurance policies with respect to risks located in Maryland and with respect to policyholders (including Elutia) located in Maryland.

## JURISDICTION

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

18.    This Court has personal jurisdiction over Defendant McGriff because McGriff has conducted business within the State of Maryland and has contracted to procure insurance for a company incorporated in Maryland.

# FACTUAL BACKGROUND

## I.     ELUTIA'S BUSINESS

19.     Elutia is a life sciences company that produces and distributes medical tissue products designed for human implantation.  Elutia uses natural materials to create products that are implanted during certain types of surgeries in order to help the site-specific cells to regenerate and the tissue to heal.

20.     At the time Elutia purchased the excess coverage from Navigators, one of its principal businesses was the manufacture and distribution of FiberCel, a fiber-based bone repair product made from human tissue and developed for human implantation to promote orthopedic/spinal repair.

21.     Elutia's other products include cell removal technology that produces undamaged extracellular matrices for use in soft tissue reconstruction and biological envelopes that remodel into vascularized tissue into which electronic cardiac devices can be placed.  These products are used in cardiac and vascular surgery, neonatal and infant cardiovascular repair, and plastic surgery.

22.     As a result, one of the principal product liability risks faced by Elutia is the low but existent possibility that patients will receive implants of tissue products containing biological pathogens or other contaminants.  Patients who receive such implants may be at risk of serious bodily harm.

## II.   PURCHASE OF THE NAVIGATORS POLICY

23.    In 2015, Elutia retained McGriff as its insurance broker to procure appropriate products liability coverage with respect to potential risks associated with its business ("BioMedical-Specific Coverage").  At all times during the procurement of the Navigators Policy, McGriff was Elutia's insurance broker.

24.    At all relevant times and as an essential requirement of being able to perform its professional brokerage duties, McGriff has known the general and specific nature of Elutia's life sciences business, which includes the production and distribution of medical human-tissue products for implantation in humans.

25.    McGriff represented to Elutia that it had appropriate experience, knowledge and expertise required to place products liability for a life sciences company like Elutia and to procure appropriate BioMedical-Specific Coverage, and McGriff assured Elutia that it would obtain appropriate BioMedical-Specific Coverage to protect Elutia from foreseeable exposures arising from its life sciences business.

26.    Elutia relied on these representations when choosing to retain McGriff, and it relied on McGriff's stated expertise in choosing appropriate insurers and policies. McGriff was aware of and intended such reliance by Elutia.

27.    In the Fall of 2020 and early 2021, McGriff procured primary liability coverage (including products liability coverage) from CNA with limits of $10 million.   CNA's policy is a "Life Sciences Liability" policy with specific

endorsements relevant to the life sciences industry.   This coverage contained BioMedical-Specific Coverage.  This coverage was required by Elutia and procured by McGriff because it specifically covered products liability claims arising from alleged bacterial infection in its human-tissue products.

28.    Elutia requested additional products liability coverage beyond primary limits, and McGriff agreed to procure appropriate follow-form excess coverage to this life sciences policy.  McGriff contacted Navigators to place this excess layer with a policy limit of $15 million.

29.    McGriff and Elutia communicated extensively about Elutia's type of business, products, and insurance needs, and Elutia's need for BioMedical-Specific Coverage.  Elutia submitted an extensive application detailing its products and potential risks.

30.    When Navigators sent its proposal for insurance for the first-layer excess products liability policy, McGriff advised Elutia to purchase the policy.  In doing so, McGriff believed and so informed Elutia that the Navigators policy was appropriate to Elutia's unique life-sciences liability exposure and that it included BioMedical-Specific Coverage.   McGriff intended that Elutia rely on these representations, and Elutia did so by agreeing to purchase the Navigators Policy in the amount recommended by McGriff.

### III.   THE CNA AND NAVIGATORS POLICIES

31.     CNA issued primary layer "Life Sciences Liability" policy no. ADT 6079208689 for the policy period of Nov. 1, 2020 to Nov. 1, 2021, with an aggregate limit of $10 million (the "CNA Primary Policy").

32.     The CNA Primary Policy has no fungi or bacteria exclusion applicable to human tissue products.

33.     The CNA Primary Policy is followed by the first-layer excess products liability policy no. GA20LEX0BITTJNC issued by Navigators for the Policy Period, and providing $15 million of coverage in excess of the $10 million in underlying limits.

34.     Except as otherwise expressly provided, the Navigators Policy "follows form" to the terms and conditions of the CNA Primary Policy, meaning that it adopts the terms and conditions as if fully set forth in the CNA Primary Policy.  McGriff assured Elutia that by following form, the Navigators excess policy would provide the same coverage as the CNA primary policy.

35.     McGriff did not inform Elutia that the Navigators Policy states that if any inconsistency or contradiction exists between an exclusion of Navigators' Policy and the coverage of the controlling underlying insurance, the exclusion of the Navigators Policy would apply.

36.     McGriff also did not inform Elutia that the Navigators Policy enumerates a number of exclusions, including damages that arise out of "the actual,

alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fungi or bacteria."

37.     A close reading of the Navigators policy discloses that this exclusion – while purporting to bar claims arising from both fungi and bacteria – actually operates much differently with respect to the two pathogens. Fungi is a defined term, with the definition stating that "fungi does not include any fungi that are, are on, or are contained in a good or product intended for human consumption."  Ex. A at p. 3 of 10. By contrast, "bacteria" is not defined in the Navigators policy, and therefore the Navigators policy purports to exclude coverage for claims arising from *all* bacteria, including bacteria contained in a product intended for human consumption (such as FiberCel).

38.     The limits of both the CNA and Navigators Policies are eroded by damages and defense costs arising out of claims against Elutia from patients who allege they received contaminated tissue samples and have suffered resulting harm.

## IV.    NAVIGATORS' LIFE SCIENCES FORM

39.     Navigators is a specialty insurer that offers niche insurance products for hard-to-place risks.  Navigators is one of a small handful of insurers that, during the relevant time period, offered policies specific to the risks present in the life sciences industry.

40.     For the non-life sciences market, Navigators provided coverage on a policy form that expressly excluded liability arising out of "the actual, alleged,

10

threatened, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fungi or bacteria."

41.     By contrast, its life sciences form modified the standard products liability policy language in key ways that reflect and respond to the nature of the life sciences business.  Most importantly here, it adds a clause to the fungi or bacteria exclusion section, stating. "This exclusion does not apply to any fungi or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." This form is titled "GLS Elite Products – Completed Operations Liability Coverage."  This form was available throughout the entire period that McGriff was Elutia's broker.

42.     McGriff was aware that Navigators offered this specialized life sciences coverage.  Based on this knowledge, McGriff contacted Navigators to provide life sciences coverage to Elutia.

43.     However, when Navigators issued its proposal for coverage and later issued its binder, the ***non***-life sciences form number was listed on the forms.  In other words, Navigators was proposing to issue coverage to Elutia (a life sciences company) but was not proposing to use its specialized life sciences form.  McGriff did not realize that the wrong form number was listed.

44.     This mistake carried forward about a month later, when Navigators issued the actual policy that omitted the life science form and instead utilized the standard form with a broad bacteria exclusion applicable to human-tissue products.

11

45.     At the time of issuance, McGriff's trained and experienced brokers and employees—who collectively had one hundred years of combined experience—reviewed the policy to ensure that the intended coverage had been provided.  This was one of the services for which Elutia had contracted and for which it paid a substantial commission to McGriff.  McGriff was aware that Elutia was relying on McGriff to review the Navigators Policy to ensure that it contained the prior coverage, and McGriff accepted the responsibility to conduct this policy review.

46.     None of McGriff's brokers or employees, despite having decades of experience in this field, then noticed the lack of the carve-out for bodily products intended for human consumption.

47.     McGriff failed to notice the erroneous coverage prior to policy placement, at the time of policy placement, or for many months thereafter.  It was not until Elutia was embroiled in products liability litigation that McGriff discovered its error.

## V.     THE UNDERLYING FIBERCEL LITIGATION

48.     In June 2021, Elutia became aware that one lot of its FiberCel orthopedic/spinal repair product, consisting of 154 units, had been inadvertently infected with tuberculosis bacteria due to an infected donor.  This occurred despite the Company's diligence in following all applicable safety protocols.  Despite an immediate recall, the infected product had already been shipped to facilities in 20 states and had been implanted in at least 113 patients during spinal fusion operations.

49.     To date, more than 100 claims have been asserted against Elutia alleging injury, including the development of tuberculosis, the need for multiple revision surgeries and eight patient deaths (the "FiberCel Litigation").  Other injuries may require medical treatment, although are less severe.  Other patients have alleged the need for medical monitoring, although many of the patients are currently in good health.

50.     More claims may still be filed.

## VI.     ELUTIA NOTIFIES ITS INSURERS OF THE FIBERCEL CLAIMS

51.     Elutia immediately notified CNA and Navigators of the claim in June 2021.  On June 17, 2021, Navigators responded with an acknowledgment letter reserving its rights and assigning Claims Representative Thomas Morelli to Elutia's claim.

52.     Beginning on June 14, 2021 (before the date of the acknowledgement letter) and continuing for seven months thereafter, Navigators participated in the defense of the FiberCel Litigation.  During this seven-month period, Mr. Morelli exchanged and reviewed correspondence and joined strategy calls with necessary parties that included Elutia representatives, the CNA claims adjuster, and defense counsel for the underlying FiberCel Litigation.

53.     However, on January 26, 2022, Navigators sent a letter to Elutia "updating" its position and stating that there was no coverage for the FiberCel Litigation claims under the Policy due to the fungi and bacteria exclusion.

54.     Navigators also informed Elutia that it no longer would participate in the mediation that the parties had planned in March of 2022.   As a result, the mediation had to be cancelled because the mediators refused to go forward without assurance that there would be sufficient funds to settle the claims.

55.     Elutia has incurred substantial costs to defend the FiberCel Litigation and in connection with mediation and settlement efforts.   The CNA primary layer has already been exhausted.

## VII.   MCGRIFF PROCURED THE WRONG POLICY

56.     Elutia intended to purchase a policy that followed the CNA Primary Policy and that provided BioMedical-Specific Coverage specific to the risks of a life sciences company.   It believed it had done so, and accordingly paid a higher premium than it would have if it had attempted to purchase a policy containing a broad bacterial exclusion applicable to bacteria in human-tissue products.

57.     McGriff also intended to procure BioMedical-Specific Coverage for Elutia from Navigators and intended that the Navigators Policy would include the correct life sciences liability form.

58.     However, the actual policy Navigators conveyed to McGriff for Elutia contained the wrong form number. McGriff failed to realize this mistake.

59.     On February 18, 2022, McGriff sent a letter to Navigators in which McGriff addressed the coverage denial.  In that letter, McGriff stated:

"We contend that this form was incorrectly attached to this policy. The correct form that was requested, and should have been attached to the [Elutia] policy, is the GLS Elite Products-Completed Operations and Professional Liability Coverage (NAV LSP PPL DEC 07 18) in which contains substantially different verbiage in Exclusion 6. Fungi or Bacteria." *See* **Exhibit B**.

60.     On August 16, 2022, McGriff counsel sent a letter to Navigators that further appealed the coverage denial, stating in relevant part:

"[T]here was mutual mistake in issuing the Policy with the Fungi and Bacteria Exclusion (as interpreted by Navigators) without the express exception that, for both fungi and bacteria, the exclusion does not apply to consumable products. The parties understood and expected that the Navigators Policy would follow form to the underlying CNA policies."

*See* **Exhibit C**.

## VIII.  MCGRIFF'S NEGLIGENCE AND BREACH OF CONTRACT CAUSED ELUTIA TO SUFFER DAMAGES

61.     Had McGriff caught the placement mistake in the Navigator's excess coverage in a timely manner, Elutia would now have the full amount of the Navigators' Policy available for payment of defense costs, settlements and potential judgments.

62.    As Navigators' insurance broker, McGriff had the duty to exercise such reasonable skill and ordinary diligence as may fairly be expected from a person in his profession or situation, in doing what is necessary to effect a policy, in seeing that it effectually covers the property to be insured, and in selecting the insurer.

63.    McGriff was negligent in failing to notice that both the proposal for insurance and the binder had the wrong form number listed.  McGriff was also negligent in failing to notice the mistaken form included in the Navigators Policy.

64.    McGriff negligently advised Elutia to purchase a Navigators Policy that contained an exclusion purporting to exclude coverage for a risk – inadvertent bacterial infection of human-tissue products – that was inherent to Elutia's core business.

65.    Elutia reasonably relied on McGriff's advice to purchase the Navigators Policy as well as McGriff's silence with respect to the presence of a bacteria exclusion applicable to human-tissue products.

66.    McGriff knew Elutia would rely on this statement when purchasing the Navigators Policy, and intended Elutia to so rely.

67.    By failing to procure the appropriate and requested coverage, and by representing that it had done so when in fact it procured a policy that did not contain the appropriate language, McGriff has violated its duties as a licensed insurance broker to acquire appropriate, effective coverage.

## COUNT ONE: BREACH OF CONTRACT
## AGAINST MCGRIFF

68.     Elutia repeats and re-alleges each and every allegation contained in each preceding and following numbered paragraph of this Complaint as if fully set forth herein.

69.     Elutia retained McGriff as its insurance broker to procure appropriate products liability coverage with respect to potential risks associated with its business. Elutia paid McGriff a commission accordingly.

70.     Elutia retained McGriff because of its stated expertise in procuring specialized coverage, including for life sciences companies.

71.     Elutia informed McGriff of the nature of its business and the risks attendant to a life sciences company.

72.     However, McGriff breached this contract and failed to procure appropriate products liability coverage, instead procuring a policy that may not cover known serious risks associated with Elutia's products.

73.     As a result of this lack of excess insurance, Elutia has suffered a loss.

## COUNT TWO: NEGLIGENCE
## AGAINST MCGRIFF

74.     Elutia repeats and re-alleges each and every allegation contained in each preceding and following numbered paragraph of this Complaint as if fully set forth herein.

75.     As Elutia's insurance broker, McGriff had the duty to exercise the reasonable care and skill of a professional insurance broker in procuring a policy that effectually covers the property to be insured.

76.     McGriff breached this duty and did not procure coverage that clearly covers Elutia's risk.

77.     McGriff was negligent in failing to notice that the proposal for insurance and binder had the wrong form number listed.

78.     McGriff was negligent in failing to notice that the mistaken form was included in the Navigators Policy.

79.     McGriff was negligent in failing to procure the coverage that Elutia had requested, that McGriff knew that Elutia required, and that McGriff agreed to procure.

80.     McGriff was negligent in failing to ask Navigators to issue coverage using the life sciences form.

81.     McGriff was negligent in failing to advise Elutia that Navigators' excess policy contained the broad bacteria exclusion.

82.     Any ordinarily diligent broker—and particularly any broker like McGriff that purported to have specialized experience and expertise in procuring coverage uniquely suited to the risks faced by the life sciences industry—would and should have noticed this broad-form bacteria exclusion, and either should have corrected this error or immediately and specifically informed Elutia that the excess

policy purported to exclude coverage for all bacteria losses, including those involving human tissue products.

83.    In all cases, McGriff did not meet the standard of care that can reasonably be expected of an insurance broker in a similar position.

84.    In all cases, McGriff did not meet the standard of care that can reasonably be expected of an insurance broker holding itself out as possessing heightened experience and expertise in a specialized, hard-to-place coverage area such as life sciences.

85.    As a result of McGriff's negligence, Elutia suffered actual injury and damages.  McGriff is liable for these damages.

## COUNT THREE: NEGLIGENT MISREPRESENTATION AGAINST MCGRIFF

86.    Elutia repeats and re-alleges each and every allegation contained in each preceding and following numbered paragraph of this Complaint as if fully set forth herein.

87.    As Elutia's insurance broker, McGriff had the duty to exercise the reasonable care and skill of a professional insurance broker in procuring a policy that effectually covers the property to be insured.

88.    Elutia and McGriff had the kind of relationship where Elutia had the right to rely on McGriff for information and McGriff had the duty to give correct

information.  Elutia had retained McGriff to advise it on its insurance needs and to help it choose and apply for insurance policies.

89.     Elutia and McGriff had discussed Elutia's need for a products liability policy that would cover life sciences companies, specifically human-tissue products implanted in patients after surgeries.

90.     McGriff explained to Elutia that the Navigators Policy would provide adequate third-party products liability coverage for its life sciences business and that it would cover the risks that they had discussed.

91.     These statements turned out to be false. Navigators denied coverage based on the broad bacteria exclusion.

92.     McGriff was negligent in making these misrepresentations.   The Navigators Policy contains an exclusion for damages that arise out of "the actual, alleged, suspected or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fungi or bacteria."

93.      Any ordinarily diligent broker—and particularly any broker like McGriff that purported to have specialized experience and expertise in procuring coverage uniquely suited to the risks faced by the life sciences industry—would  and should have noticed this broad-form bacteria exclusion, and either should have corrected this error or immediately and specifically informed Elutia that the excess policy purported to exclude coverage for all bacteria losses, including those involving human tissue products.

94.     McGriff intended that Elutia would purchase the Navigators Policy based on its these representations.  McGriff also intended that it would earn a commission from the purchase.

95.     McGriff knew and intended that Elutia relied on McGriff's representations as to adequate and appropriate coverage and its silence as to inadequacies in the Navigators Policy in deciding to purchase the policy and knew that if the representations and silence were inaccurate, Elutia would suffer foreseeable loss or damages.

96.     Elutia justifiably relied on these statements when purchasing the Navigators Policy, as McGriff was its insurance broker and this statement was made in the context of advising Elutia on which policy to purchase.

97.     Elutia suffered damage as a result of McGriff's negligent misrepresentation.

## **RELIEF SOUGHT**

**WHEREFORE**, Elutia respectfully requests judgment as follows:

A.     Elutia requests damage from McGriff based on its breach of contract, negligence, and negligent misrepresentation in an amount to be proven at trial.

B.     Elutia requests such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Elutia hereby demands a trial by jury on all issues so triable.

Dated:  December 11, 2023

_/s/ Jeffrey J. Hines_____
Jeffrey J. Hines (Bar No. 03803)
Kamil Ismail  (Bar No. 12053)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
Phone:  410-783-4000
Facsimile:  410-783-4040
jjh@gdldlaw.com
kxi@gdldlaw.com
*Attorneys for Plaintiff, Elutia Inc.*

4874-9693-1220, v. 2