IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ELUTIA, INC.<br>(f/k/a AZIYO BIOLOGICS, INC.),<br><br>               Plaintiff,<br>   v.<br><br>MCGRIFF INSURANCE SERVICES, INC.,<br><br>               Defendant. | Case No.   8:23cv03359-DLB |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Elutia, Inc. (f/k/a Aziyo Biologics, Inc.), sued Defendant, McGriff Insurance Services, Inc., after McGriff negligently misrepresented, in breach of the parties' contract, the scope of the products liability policy that Elutia hired McGriff to procure. McGriff moves to dismiss, claiming that Elutia failed to sufficiently plead various aspects of its claims.

McGriff's motion is without merit. Elutia's complaint identifies facts that plausibly allege the elements of breach of contract, negligence, and negligent misrepresentation. It details the parties' agreement that McGriff would procure appropriate insurance coverage for Elutia's life sciences business for which it received a substantial commission, the breach of that agreement through McGriff's procurement of a policy that excluded bacterial-inflicted bodily injury, and McGriff's negligence and negligent misrepresentations in assuring Elutia that the policy was appropriate and recommending that Elutia purchase the policy. Finally, Elutia pleads that McGriff's actions caused Elutia to suffer out-of-pocket litigation costs, lost excess coverage and the cancellation of a mediation that could have resolved pending claims against Elutia that, but for McGriff's breach of contract and negligence, would have been covered by insurance.

1

## FACTS ALLEGED IN THE COMPLAINT

Elutia is a life sciences company that manufactures and distributes products designed for implantation to assist in post-surgical bone and soft tissue repair. Compl. ¶¶ 19-22. Because Elutia's products are made from human tissue, there is a small but present possibility that patients will receive implants contaminated by biological pathogens or impurities. *Id.* ¶22. These implants put patients at risk of serious bodily harm and, as a result, the small possibility of contamination is one of the principal product liability risks Elutia faces. *Id.*

Recognizing this risk, and intending to plan accordingly, in 2015, Elutia retained McGriff as its insurance broker to select and purchase appropriate products liability coverage. *Id.* ¶23. McGriff knew that Elutia manufactured and produced human-tissue implantation devices, and represented to Elutia that it had the experience, knowledge, and expertise to evaluate and select BioMedical-Specific products liability insurance sufficient to protect Elutia from foreseeable exposures related to its life science business. *Id.* ¶¶24-25. McGriff intended Elutia to rely on its representations about its ability to select appropriate coverage for Elutia and Elutia, in fact, did rely on those representations in selecting McGriff as its broker. *Id.* ¶26.

From late 2020 through early 2021, Elutia engaged McGriff to procure products liability insurance for the policy year ending October 31, 2021, for which McGriff received a substantial commission. *Id.* ¶27. A primary policy with coverage of $10 million was purchased that included specific endorsements related to the life sciences industry, including BioMedical-Specific Coverage. Compl. *Id.* Elutia was clear that this coverage was essential because it covered products liability claims arising from alleged contamination of its human-tissue products. *Id.*

After the primary policy was purchased, Elutia requested that McGriff procure appropriate follow-form excess coverage to the life sciences policy. *Id.* ¶28. Elutia provided McGriff with extensive information about its business, products, potential risks, and insurance

2

needs, and submitted a thorough application with the same information. *Id.* ¶29. McGriff chose Navigators to provide the excess coverage, with a policy limit of $15 million. *Id.* ¶28.

Navigators sent McGriff a proposal for the excess products liability policy. *Id.* ¶30. McGriff's brokers—with a collective 100 years of experience in the insurance industry—reviewed the policy proposal to ensure that it met Elutia's needs. *Id.* ¶45. McGriff assured Elutia that the policy was appropriate for Elutia's life sciences liability exposure and that it included the same BioMedical-Specific Coverage that the primary liability policy contained. *Id.* ¶30. McGriff advised Elutia to purchase the policy. *Id.* McGriff intended Elutia to rely on its representations and assurances, and Elutia did so, accepting McGriff's recommendation to purchase the policy in the amount McGriff recommended.

Several months later, Elutia learned that, despite adhering to stringent safety protocols, one lot of its FiberCel orthopedic/spinal repair product was contaminated with the tuberculosis bacteria from an infected donor. *Id.* ¶48. Despite an immediate recall, the infected product was implanted in at least 113 patients. *Id.* More than 100 claims have been asserted against Elutia thus far, with the possibility of more to come. *Id.* ¶49. The claims allege injuries including the development of tuberculosis, the need for revision surgeries, and eight patient deaths. *Id.*

Elutia immediately notified its insurers of the claims. *Id.* ¶51. Navigators responded and assigned a claims representative. *Id.* For seven months, Navigators participated in the defense, joining in strategy calls and exchanging correspondence. *Id.* ¶52. Then, on January 26, 2022, Navigators wrote Elutia to say that it had "updated" its position and now believed there was no coverage for the litigation claims under the policy. *Id.* ¶53. Navigators informed Elutia that it would no longer participate in the defense of the litigation, including a previously scheduled mediation. That mediation was ultimately cancelled because Elutia could not provide assurance

that there would be sufficient funds to settle the claims. *Id.* ¶54.

After Navigators told Elutia it would not cover the claims, Elutia discovered that the policy McGriff encouraged it to purchase contained an exclusion for damages that arise from "the actual, alleged, suspected, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fungi or bacteria." *Id.* ¶36. While the Navigators policy otherwise "follows form" to the terms and conditions of the primary policy, it states that if any inconsistency exists between terms of the primary and excess policies, the exclusions of the Navigators policy would apply. *Id.* ¶¶34-35. McGriff did not inform Elutia of either the fungi/bacterial exclusion or the clause that declares Navigators' controls in the event of a conflict. *Id.* ¶¶35-36.

At the time Elutia purchased the policy, Navigators offered coverage specifically for businesses in the life sciences industry. *Id.* ¶39. The industry-specific policy included a form which modified the standard fungi/bacterial exclusion to say that it "does not apply to any fungi or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." *Id.* ¶41. Despite that Navigators offered a policy tailored to the life sciences industry, and despite Elutia's instructions to McGriff to procure excess insurance that would cover foreseeable products liability claims, McGriff advised Elutia to purchase a policy that contained a broad bacteria exclusion. *Id.* ¶¶35-37. Notwithstanding decades of experience in the insurance broker business, none of McGriff's brokers noticed the lack of a carve-out in the fungi/bacteria exception for products intended for human consumption. *Id.* ¶46.

Elutia has exhausted its primary insurance litigating the FiberCel contamination claims. *Id.* ¶55. Elutia now has to incur the significant costs of this litigation, including mediation and settlement costs. *Id.* Had McGriff not breached its duty to Elutia and misrepresented the terms

4

and conditions of the Navigators' policy, Elutia would have $15 million in excess insurance coverage with which to litigate the FiberCel claims. Instead, Elutia is bereft of this coverage.

## ARGUMENT

Elutia sued McGriff for breach of contract, negligence, and negligent misrepresentation based on McGriff's procurement of the incorrect insurance policy, a mistake that left Elutia exposed and forced it to pay substantial litigation costs that would otherwise be covered by insurance. On January 15, 2024, McGriff filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Elutia failed to adequately plead damages and the existence of a contract between the parties, and failed to identify McGriff's misrepresentations with adequate specificity. None of McGriff's bases for dismissal holds water.

Elutia more than sufficiently pleads its claims and damages—the complaint is clear that Elutia's primary insurance coverage is exhausted and litigation is ongoing. Indeed, settlement discussions have been deferred in several cases due to Elutia's lack of coverage. Additionally, Elutia has incurred attorneys' fees and other litigation costs pursuing legal remedies against Navigators due to McGriff's negligence. Finally, Elutia has had to report its excess liability on its financial reports, which has negatively affected its position with investors and the market.

The complaint likewise states facts sufficient to show the existence of a contract. McGriff was paid a substantial commission in exchange for its insurance brokerage services, including the procurement of insurance policies appropriate for Elutia's life sciences business. Finally, Elutia pleads with particularity the specific negligent misrepresentations made by McGriff upon which it relied. McGriff told Elutia that the Navigators' excess coverage policy was appropriate for its purposes and advised Elutia to purchase the policy. Elutia relied on those statements when deciding to purchase the policy and later learned that, due to McGriff's negligence, the statements upon which it relied were inaccurate. All three of Elutia's counts state claims upon

which relief can be granted. McGriff's motion to dismiss must be denied.

### A. To survive a 12(b)(6) motion to dismiss, a complaint need only contain a short and plain statement sufficient to show the pleader is entitled to relief.

A 12(b)(6) motion to dismiss "tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211-12 (4th Cir. 2019). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required. The complaint need only "contain sufficient factual matter" that, when accepted as true, "'state[s] a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In assessing a Rule 12(b)(6) motion, the Court must "accept all facts pled in the complaint as true and 'draw all reasonable inferences in favor of the plaintiff.'" *Short v. Hartman*, 87 F.4th 593, 603 (4th Cir. 2023) (quoting authority). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to state a claim that is plausible on its face[, a] standard [that] is not akin to a probability requirement, but. . .asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal punctuation omitted).

Probability of success on the merits is irrelevant to the 12(b)(6) analysis. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Woods v. City of Greensboro*, 855 F.3d 639, 652-53 (4th Cir. 2017) (cleaned up). The question before the Court is not whether Elutia will ultimately prevail but whether the complaint alleges facts sufficient to state a claim plausible on its face. *Id*. *See also Houck v. Substitute Tr. Servs.*, 791 F.3d 473, 484 (4th Cir. 2015) ("To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is

probable or that alternative explanations are less likely; rather, she must merely advance her claim across the line from conceivable to plausible.") (quotation omitted).

### B. Elutia's complaint alleges facts sufficient to show it is entitled to damages

The complaint alleges that more than 100 claims have been asserted against Elutia arising from bacterial contamination of a single lot of Elutia's FiberCel product. Compl. ¶49. Elutia has exhausted its primary insurance coverage and has "incurred substantial costs," Compl. ¶55 – costs that, absent McGriff's negligence, Elutia would not have incurred. Not only was Elutia forced to cancel a scheduled mediation because, without Navigators' participation, Elutia was unable to ensure that it had sufficient funds to settle the claims, but Elutia incurred litigation costs pursuing remedies against Navigators and suffered damages based on the reporting of the inflated non-recoverable liabilities on its financials. Compl. ¶54.

Notwithstanding these specific allegations of damages caused by McGriff's breach of contract, negligence, and negligent misrepresentations, McGriff argues that all three claims must be dismissed because "Plaintiff does not articulate any actual injury suffered, and therefore, the claims asserted are not yet ripe for adjudication." Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint ("Def.'s Mem.") at 4. Ignoring Elutia's factual assertion that it has already incurred substantial costs based on McGriff's negligence, McGriff cherry-picks quotes from Elutia's discussion of the *additional* damages it may suffer to argue that Elutia's damages remain "wholly speculative" and its claims unripe. *Id*. at 5-6. Elutia, McGriff says, has not yet suffered "any actual economic damages that it has itself had to pay out of pocket." *Id*. at 6. McGriff's argument is factually incorrect and its cases inapposite.

"To survive a 12(b)(6) motion, it is enough for the plaintiff to allege facts that would allow them to recover some damages." *Brooks v. Bd. of Ed.*, No. 8:20-CV-03414, 2022 U.S. Dist. LEXIS 232495, at *16-17 (D. Md. Dec. 27, 2022). There is no requirement that a plaintiff

7

plead a specific amount of damages or plead damages with particularity. *Id*. at 16. Thus, this Court has denied motions to dismiss for failure to plead damages where the plaintiff alleged that he sought therapy and chiropractic treatment to manage the stress caused by defendant's actions, *id.,* and where plaintiffs alleged that the defendant's actions damaged their credit score, resulted in plaintiffs forgoing alternative legal avenues to save their home, and caused emotional damages. *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 U.S. Dist. LEXIS 86077, at *30 (D. Md. Aug. 4, 2011).

The cases Defendant cites in support of its ripeness argument illustrate the sufficiency of Plaintiff's pleading. In *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 295-96 (4th Cir. 2022), for example, a group of environmental organizations sued the Council on Environmental Quality, alleging that a new rule promulgated by the Council *might* lead to less robust enforcement of certain federal statutes. The Fourth Circuit dismissed the case as unripe, noting that plaintiffs' claims were based on their fears about the *potential* effect of the new rule. *Id*. at 296. Because the Council and its related administrative agencies had not yet begun to implement the new rule, the Court held, plaintiffs' claims rested upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*. (quotation omitted). Likewise, in *Scroggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013), plaintiffs filed suit against their homeowners association for allegedly violating federal law by denying their application to build a wheelchair ramp. The Court found that the claim was not ripe because, although the association asked for more information about the dimensions of the ramp, it had not yet denied the plaintiffs' request. *Id*. at 270-71.

Unlike *Wild Va.* and *Scroggins*, there is no "contingent future event" upon which Elutia's claims depend. Over 100 patients have already claimed injuries stemming from FiberCel

8

implants, Elutia's primary coverage is already exhausted, Navigators has already denied coverage, and Elutia has already incurred a variety of costs, lost excess coverage and lost resolution opportunities related to that ongoing litigation. Elutia pleads facts sufficient to show that it is entitled to damages. The claim is ripe and the complaint adequately pleads damages. McGriff's motion to dismiss on ripeness grounds should be denied.

### C. Elutia sufficiently pleads the existence of an agreement between Elutia and McGriff

Elutia retained McGriff to determine Elutia's insurance needs and to "find the best coverage for [its] unique needs" as a life sciences company. Compl. ¶¶5-6, 23. In late 2020 and early 2021, McGriff was paid a commission to procure for Elutia excess insurance coverage specifically for the products liability risk arising from potential contamination of Elutia's human tissue products. Compl. ¶¶ 27-29. In other words, Elutia and McGriff entered into an agreement whereby McGriff agreed to use its knowledge and expertise in the insurance brokerage industry to identify an insurance policy that would provide sufficient excess coverage for Elutia's needs and, in return, Elutia would pay McGriff a commission.

McGriff insists that, in addition to the above facts, Elutia was required to plead (1) who at McGriff contracted with Elutia, (2) the date McGriff contracted with Elutia, and (3) the specific terms of the agreement. (Def.'s Mem. at 8). McGriff is wrong—none of these details is necessary. The complaint sufficiently pleads the existence of the contract that McGriff breached.

To adequately plead a breach of contract claim, a plaintiff must put forth facts sufficient to show "'that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *Avery v. Chariots for Hire*, 748 F. Supp. 2d 492, 503 (D. Md. 2010) (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)). The plaintiff "need not quote specific language from the contract in its complaint and has no obligation to attach to the

complaint a copy of the contract." *Natural Product Solutions, LLC v. Vitaquest International, LLC*, No. CCB-13-436, 2013 U.S. Dist. LEXIS 87969, at *2 (D. Md. June 24, 2013). Indeed, in *Natural Pet Solutions*, this Court held that a plaintiff who "alleged that it contracted with the defendants to manufacture and ship a line of natural supplements" and that the "defendants breached the contract when they affixed the wrong labels and shipped the wrong type and quantity of natural supplements" adequately pleaded a breach of contract claim. *Graham v. Interworld Cleaning, Inc.*, Civil Action No. GLR-16-2179, 2017 U.S. Dist. LEXIS 218204, at *8 (D. Md. Mar. 29, 2017) (summarizing the holding in *Natural Pet Solutions*).

Elutia's complaint contains facts sufficient to show that McGriff owed Elutia a contractual obligation. It alleges that Elutia agreed to pay McGriff in exchange for McGriff's agreement to apply its knowledge of insurance coverage and policies to procure an appropriate excess coverage products liability insurance policy. McGriff breached its contractual obligation when it recommended that Elutia purchase an insurance policy, the terms of which expressly excluded the very coverage Elutia requested. Elutia adequately pleads a breach of contract claim and McGriff's motion to dismiss should be denied.

**D.     Elutia pleads facts sufficient to identify the negligent misrepresentation made by McGriff and relied upon by Elutia**

Elutia chose McGriff as its insurance broker based on McGriff's professed ability to "find the best coverage for your unique needs." Compl. at ¶5. Elutia provided McGriff's brokers—chosen for their experience in procuring insurance for life sciences companies—extensive information about its company, its products, and its insurance needs. *Id.* ¶¶6, 30. These conversations made it clear and obvious that Elutia needed products liability coverage that did not contain an exclusion for bacteria-inflicted bodily injury. McGriff, in turn, chose Navigators to be the insurance provider and reviewed Navigators' policy proposal when it was submitted. *Id.*

¶¶30, 42. After review, McGriff informed Elutia that the proposed policy met its needs and advised Elutia to purchase it. *Id.* ¶30. McGriff intended Elutia to rely on its assurances and purchase the policy based on its recommendation. Compl. ¶30. Elutia did, in fact, rely on McGriff's assurances and purchased the $15 million policy. *Id.* ¶30.

Elutia later learned that McGriff's statement that the policy met Elutia's need for a policy without the ordinary exclusion for bacteria-inflicted bodily injury was a misrepresentation caused by its negligent review of the policy's terms. *Id.* ¶¶41-47. Unfortunately, by the time McGriff's negligent misrepresentation was discovered, Elutia was in the midst of defending over 100 claims based on bacteria-inflicted injury allegedly caused by its FiberCel product.

McGriff, citing *Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702 (D. Md. Sept. 5, 2006), argues that Elutia failed to plead the contents of the misrepresentations with "adequate specificity" and failed to identify who made the statements, when and where they were made, and any facts to support Elutia's reliance upon them. Def.'s Mem. at 10-11. McGriff's reliance on *Orteck*, however, is misplaced, as Elutia's Complaint more than meets its standard of "adequate specificity." *Id.* at 10 (quoting *Orteck*). In *Orteck*, the plaintiffs simply provided a list of alleged misstatements that were said to have been made by one or more of three separate parties, without any specificity as to which party made the statements or the time and place of the statements. *Id*. at *71. Further, plaintiffs summarily asserted that they relied on the misrepresentations, without any facts supporting this assertion. *Id*.

Elutia's complaint contains far more detail about the negligent misrepresentations than the complaint in *Orteck*. Elutia pleads facts sufficient to allege that McGriff's brokers made negligent misrepresentations about the scope of the coverage of the Navigators policy between late 2020 and early 2021, during the time that Elutia retained McGriff to procure excess products

liability coverage. The misrepresentations were made during the various communications between Elutia and McGriff representatives and culminated with McGriff's recommendation that Elutia purchase the Navigators policy. Relying on McGriff's brokers for the very expertise that Elutia was paying them for, Elutia followed the recommendation and purchased the policy.

That degree of specificity is more than sufficient to adequately plead negligent misrepresentation. McGriff's motion to dismiss should be denied.

## CONCLUSION

McGriff claims that Elutia's complaint fails to state a claim because (1) it does not plead actual damages, (2) fails to plead facts sufficient to establish the existence of a contract, and (3) does not identify with particularity the negligent misrepresentations upon which Elutia relied. All three of McGriff's reasons for dismissing Elutia's complaint are baseless. Elutia pleads damages in the form of out-of-pocket costs, lost excess coverage and lost opportunities to resolve products liability claims that, but for McGriff's negligence, would have been covered by its excess coverage insurance policy. It pleads facts sufficient to demonstrate that McGriff agreed to procure appropriate insurance coverage for Elutia and in exchange received a substantial commission, and it pleads facts sufficient to identify the negligent misrepresentations upon which Elutia relied. Elutia's complaint states claims upon which relief can be granted. Accordingly, McGriff's motion to dismiss should be denied.

Dated:  February 8, 2024   */s/ Kamil Ismail*_____
Jeffrey J. Hines (Bar No. 03803)
Kamil Ismail  (Bar No. 12053)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
Phone:  410-783-4000
Facsimile:  410-783-4040
jjh@gdldlaw.com
kxi@gdldlaw.com
*Attorneys for Plaintiff, Elutia Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of February, 2024, a copy of the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss was filed with the Clerk of the Court using the Court's CM/ECF system, which will provide notice to:

Elena D. Marcuss, Esquire
McGuire Woods LLP
500 East Pratt Street, Suite 1000
Baltimore, MD 21202
***Counsel for Defendant McGriff Insurance Services, LLC***

                                          */s/ Kamil Ismail*_____
                                          Kamil Ismail